JOHNSON, Judge.
The defendants prosecute this suspensive appeal from the judgment in favor of plaintiffs.
Nettie Wilson and her husband, Leon Wilson, are the plaintiffs. The defendants are Joseph Morris, Jr., and Nola Cabs, Inc., the insurer of the taxicab. Mrs. Wilson was driving her husband’s Chrysler automobile toward the lake on the right of three lake bound traffic lanes of Canal Street crossing Claiborne Avenue at about 8:30 a. m., on Sunday, September 14, 1958. Morris said the taxicab was travelling in the lane next to the neutral ground on Claiborne Avenue headed downtown. Defense witness LeBlanc places the taxicab in a different lane. The taxicab went across Canal Street and collided with the left side of the Chrysler about the time it reached the neutral ground on North Claiborne Avenue. The collision resulted in damages to the Chrysler and personal injury to Mrs. Wilson.
The only issue in dispute is, who entered the intersection on the green traffic light? Both drivers claim the right of way by virtue of a green light. Mrs. Wilson is positive that the light was red as she approached the intersection, but before she reached Claiborne Avenue the light turned green and she did not have to stop. Morris says the same thing about his position on Claiborne Avenue.
Mrs. Wilson is supported in her testimony that she entered and was crossing Claiborne Avenue when the light was green for Canal Street traffic by A. H. Green, who was standing in front of the O. E. Haring Automobile Sales building on the downtown side of Canal Street about 100 feet toward the river from Claiborne Avenue. He saw both cars approach and said the light at the corner across Canal Street from him turned red facing Claiborne Avenue before Mrs. Wilson entered Claiborne Avenue. Mrs. Wilson had just passed the point where he was standing when she entered to cross Claiborne Avenue. He said the taxicab, coming very fast on Claiborne Avenue, entered the intersection on the red light to cross Canal Street. He noticed particularly the light at the corner of Canal and Gulf Service Station which was in front of him and the light was red facing Claiborne traffic. The light had to be red for the taxicab.
Counsel criticizes Green’s statement that the taxicab was coming into the intersection pretty fast, and when asked as to how fast the taxicab was travelling Green estimated the speed at about 25 miles per hour. There is some inconsistency in the statement that the taxicab was travelling fast at 25 miles per hour. However, we do not believe that such slight inconsistency is sufficient to clothe his testimony with incredulity or on which to attack the veracity of this witness. Particularly is that true when the remainder of Green’s testimony is conservative and impressive. When questioned further about 25 miles per hour being a fast speed Green said that at any rate he knew the taxicab was going pretty fast, and we interpret that to mean that he would not adhere strictly to the 25 miles per hour estimate but would contend that it was going pretty fast. He 'thought the driver must have been drunk. Counsel further declares that Mr. Green is not an entirely disinterested witness because of the fact that the Chrysler automobile was repaired in the shop of Green’s employer, Haring. We fail to see any significance in that connection, particularly *95 when it was shown that at the time of the trial of the case Green had changed positions and was not then employed by Haring. Green did not know Mrs. Wilson and had never seen her before that day. He also said there was no passenger in the taxicab.
Green also testified that the taxicab crossed the uptown side of Canal Street and about the time he entered the downtown side Mrs. Wilson’s car was already in the intersection and crossing the river side of North Claiborne Avenue in front of him and the taxicab turned to its left, either to go out Canal Street or to try to miss the Wilson car, when he struck the car on the left side. The force of the collision shoved the Chrysler against the neutral ground of North Claiborne Avenue. The evidence otherwise shows that the taxicab skidded about 10 feet before striking the Wilson car.
Mrs. Wilson at first said that the light she was looking at when she entered Claiborne Avenue was in front of her and to her left, which would refer to the light on the neutral ground in the center of the intersection quadrant formed by both sides of Canal Street and Claiborne Avenue. She also said she saw a traffic light to her right across Claiborne Avenue at the Esso Service Station corner. The police officer who testified said that particular light was knocked down and not operating at that time. Counsel for the defendants attempts to make a point to discredit Mrs. Wilson’s statement that she saw a light at that corner when there was no light there. The pictures in evidence show that there are a number of traffic lights at different points around the intersection and on the neutral ground in the intersection. It must be common knowledge that at the intersection of major double boulevards in New Orleans, such as Canal Street and Claiborne Avenue, there are traffic lights at the outside corners and on the neutral ground inside and outside the intersection quadrant. There was a light in front of Mrs. Wilson and to her right and she could easily have misplaced its location. We agree with the statement of the trial court in his reasons for judgment when he said:
“From the evidence, I am convinced that Mrs. Wilson was driving on Canal Street and proceeded into the intersection of North Claiborne Ave. on Canal St. on a green light, that she had the right of way, and that Defendant Morris, chauffeur of the colored cab, entered the intersection too late, after the amber light faced him long enough for him to stop; but in attempting to race across, and being unable to do so, he collided with the automobile of Mrs. Wilson.”
We also agree with the findings of the trial judge in his further statement that:
“ * * * Mrs. Wilson did state that she didn’t see any automobile approaching from her left, the direction in which the taxicab came. It could have been that she didn’t see it because the cab came so fast, but even if she had been looking and she had the right to cross and the taxicab was driving, as the driver said, at a moderate speed, she would have had the perfect right under the law to assume he would obey the law and concede her the right of way.”
The defense produced the testimony of Sidney J. LeBlanc, another taxicab driver, who said he was following close behind the Morris cab, Willie Williams, who said he was painting inside the Gulf Service Station at the uptown river side corner of Canal Street and South Claiborne Avenue and George Reese, who said he was a passenger on the front seat of the Morris taxicab. Like the trial court, we find the testimony of each of these witnesses so incredible that we do not believe that LeBlanc was driving the cab behind Morris and do not believe that Reese was a passenger in the Morris cab. Willie Williams did not see the collision but only heard it and after the collision he said he saw a green light for traffic on Claiborne. We must completely disregard the testimony of these witnesses, as did *96 the trial judge. It is definitely proven that Mrs. Wilson entered the intersection and was crossing on a green traffic signal and that she had the right of way.
The preponderance of the evidence shows that Mrs. Wilson was guilty of no negligence, contributory or otherwise, and that Morris was grossly negligent and his negligence was the sole cause of the accident and resulting damages. Preponderance in law means credibility, influence and weight and not the number of witnesses.
We quote the trial court’s written reasons which accurately appraise the quantum of damages:
“On the question of quantum, while the Plaintiff claims various and sundry injuries, including umbilical hernia, general body contusions, hysteria, fracture injuries of the chest and various other alleged injuries, the medical testimony satisfies me that her sole injuries, except for a little shake-up, consisted of the fracture of the fifth and sixth ribs, which have pretty well healed but still cause her trouble. Any discomfort that she had, such as the alleged umbilical hernia and other injuries, may have been a temporary aggravation by hypertrophic changes due to the aging processes, the lady being sixty-four years of age. Under the circumstances, I will allow two thousand dollars ($2,000.00) to Mrs. Wilson for her separate and paraphernal estate for the injury to her ribs, pain and suffering, with interest from judicial demand; and to Mr. Wilson, there will be judgment for the automobile repairs in the amount of $504.00, together with $376.-00 for doctor bills, and $50.00 each for the three experts who testified.”
The judgment as it was signed by the trial judge correctly included legal interest on the amounts awarded Mr. Wilson.
The judgment is affirmed. Defendants are to pay all costs.
Judgment affirmed.